Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| RICOH PUERTO RICO, INC.<br><br>Recurrente<br><br>V.<br><br>JUNTA REVISORA DE SUBASTAS DE LA ADMINISTRACIÓN DE SERVICIOS GENERALES, JUNTA DE SUBASTAS Y LA ADMINISTRACIÓN DE SERVICIOS GENERALES<br><br>Recurridos | KLRA202400433 | *Revisión de Decisión Administrativa* procedente de la Administración de Servicios Generales<br><br>Caso Núm.: RFP 24J-01599<br><br>Sobre: Revisión Judicial de Adjudicación |
|---|---|---|

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Jueza Romero García y el Juez Rivera Torres

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 23 de agosto de 2024.

El 7 de agosto de 2024, compareció ante este Tribunal de Apelaciones, Ricoh Puerto Rico, Inc. (en adelante, Ricoh Puerto Rico o parte recurrente), por medio de *Solicitud de Revisión*.[1] Mediante esta, nos solicita que revisemos la *Resolución de Adjudicación* emitida y notificada por la Junta de Subastas de la Administración de Servicios Generales (ASG) (en adelante, Junta de Subastas o parte recurrida), el 17 de junio de 2024. En virtud de la aludida Resolución, la Junta de Subastas le adjudicó la buena pro a Xerox Corporation, Inc. (en adelante, Xerox).

Por los fundamentos que se exponen a continuación, se desestima el recurso por falta de jurisdicción, por notificación defectuosa.

---

[1] Traído ante nuestra atención el 19 de agosto de 2024.

Número Identificador

SEN2024 _____

**I**

El 23 de agosto de 2024, la ASG emitió el *Pliego de Solicitud de Propuestas Selladas RFP 24J-01599* (en adelante, RFP 24J-01599). El propósito de esta era "[e]stablecer contrato de selección múltiple para la digitalización de indexación de documentos de los expedientes de participantes y comerciantes de los programas que maneja la Administración de Desarrollo Socioeconómico de la Familia (ADSEF)". De acuerdo al pliego, la fecha de la reunión pre-propuesta sería el 1 de septiembre de 2023, a las 2:00 pm; la fecha límite para presentar solicitud de aclaración (RFC) en o antes del lunes, 4 de septiembre de 2023, a las 4:00 pm; la fecha límite para la entrega de propuesta en o antes del viernes, 15 de septiembre de 2023, a las 9:00 am, y la fecha del acto de apertura el viernes, 15 de septiembre de 2023, a las 9:30 am. El pliego contenía las instrucciones, requisitos, términos y condiciones generales para participar del proceso de licitación.

Respecto a los criterios de evaluación, estableció lo siguiente:

**4.1 EVALUACIÓN**

La Junta de Subastas, el Especialista en Compras y Subastas de la ASG o el Comité Evaluador de Subastas y Propuestas, según sea el caso, evaluarán las propuestas basadas en el cumplimiento con especificaciones, términos y condiciones, desempeño pasado, capacidad financiera, capacidad técnica, término de entrega, garantía, precio y lo que representa el mejor valor para el Gobierno de Puerto Rico.

En la primera fase se llevará a cabo una evaluación preliminar, en la cual se examinarán las propuestas para verificar que en las mismas cumplan con l[o]s términos y condiciones insubsanables o compulsorios establecidos en el pliego de este RFP. Si del resultado de la evaluación surge que el Proponente incumplió en uno o más de los criterios dispuesto[s] en el Anejo IV, su propuesta **será rechazada de plano** por la Junta, sin ulteriores procedimientos.

Las propuestas que **cumplan con todos los criterios** establecidos en el Anejo IV continuarán en el proceso de evaluación.

En la segunda fase el Comité Evaluador de Subastas y Propuestas o el Especialista en compras, evaluarán

mediante la otorgación de puntos el <u>desempeño pasado, capacidad financiera, capacidad técnica, término de entrega, garantía y precio</u> de la Propuesta del Proponente, y le someterán a la Junta de Subastas su recomendación debidamente fundamentada. Los puntos otorgados se basarán en el desempeño de los Proponentes en los criterios dispuestos a continuación, y servirán de guía a la Junta de Subastas al momento de evaluar. La Junta de Subastas aprobará, en coordinación con la Agencia Requirente o el Comité Evaluado, según sea el caso, la distribución de la puntuación para los distintos criterios, que se utilizará en la evaluación de las propuestas.

| Criterio | Puntuación Máxima |
|---|---|
| Capacidad Técnica | 45 |
| Desempeño Pasado | 25 |
| Precio | 20 |
| Capacidad Financiera | 10 |
| **TOTAL** | 100 |

Tabla 2 Desglose de la Evaluación

Recibid[a] en la Junta la correspondiente recomendación, esta procederá a realizar un análisis de las propuestas y las recomendaciones iniciales para determinar si las acoge o no.

En aquellos casos en los que ninguno de los Proponentes cumpla con alguno de los criterios establecidos en este pliego, la Junta de Subastas podrá eliminar la puntuación reservada para ese criterio para todos los proponentes y utilizar como puntuación base la suma de los restantes criterios. De ser este el caso, la Junta así lo expresar[á] y fundamentará su decisión en la Resolución donde se adjudique la "*buena pro*".

La Junta rechazará cualquier propuesta cuando un proponente obtenga cero (0) puntos en cualquiera de los criterios de evaluación establecidos en esta Sección.

Las propuestas que, en la segunda fase, obtengan como resultado de la evaluación de la Junta de Subastas, al menos, la mitad de los puntos en la suma de todos los criterios, sin tomar en cuenta el criterio de precio, serán Proponentes Calificados para continuar en el proceso. Las propuestas que no obtengan en la segunda fase, como resultado en su evaluación la puntuación mínima aquí requerida, serán rechazadas.

Culminada esta segunda fase la Junta podrá determinar si a base de la existencia de una competencia completa y abierta, o a base de experiencia previa en torno al costo del producto o servicio, la adjudicación se puede realizar sin discusión adicional de las propuestas iniciales.

En caso de que la Junta de Subastas determine que se deben llevar a cabo discusiones o negociaciones de propuestas, deberá iniciar el proceso de BAFO, en cumplimiento con lo dispuesto en este pliego y en el

Reglamento Núm. 9230. La Junta de Subastas deberá convocar para el BAFO aquellos proponentes que cumplan con las disposiciones establecidas en el pliego, otorgándoles un trato justo e igual en cuanto a la oportunidad de discutir y revisar las propuestas. Sin embargo, como la información que se trata en dichas reuniones podrá variar en relación a cada proponente, las revisiones o discusiones estarán basadas en hechos y circunstancias particulares de cada propuesta.

Recibidas las propuestas finales, se procederá con la evaluación final por parte del Comité Evaluador de Subastas y Propuestas o el Especialista en Compras, quienes remitirán a la Junta de Subastas su recomendación final. La Junta analizará ponderadamente las ofertas y las recomendaciones recibidas, para entonces determinar cuál o cuáles propuestas cumplen con todos los términos, condiciones, especificaciones, requisitos y disposiciones establecidos en este RFP, y cuál o cuáles representan el mejor valor para el Gobierno de Puerto Rico.

Así las cosas, el 21 de septiembre de 2023, Ricoh Puerto Rico presentó la *Propuesta para el RFP 24J-01599*. Mientras que, el 22 de septiembre de 2023, Xerox presentó *Proposal for Digitalization and Indexation of Documents for Puerto Rico Government.*

El 17 de junio de 2024, la Junta de Subastas emitió la *Resolución de Adjudicación* sobre el *Aviso de Adjudicación de la Solicitud de Propuestas Selladas Núm. 24J-01599*. En la *Resolución*, la Junta de Subastas expresó que, había recibido tres (3) propuestas, presentadas por: 1) Ricoh Puerto Rico, Inc.; 2) Xerox Corporation y 3) Innovative Consultants Associates, Inc. De la *Resolución* surge que, el *Especialista*, junto a los consultores evaluaron las propuestas para determinar cuáles serían los proponentes cualificados. Luego de haberlas evaluado, la Junta de Subastas determinó que, los proponentes calificados por haber aprobado las dos (2) primeras fases lo eran: 1) Ricoh Puerto Rico, Inc. y 2) Xerox Corporation. A tales efectos, fue celebrada una reunión el 25 de enero de 2024, a la que se citó a los representantes de dichas compañías con el propósito de aclarar algunas de sus propuestas o requerirles información adicional, y solicitar una oferta mejor y final.

De la *Resolución* también surge que, el 29 de enero de 2024, se les indicó a los licitadores los puntos que tenían que aclarar en sus propuestas y se les concedió hasta el 5 de febrero de 2024, a las 2:00 pm. Cumplido el plazo establecido, la Junta recibió las aclaraciones a las propuestas y las nuevas ofertas. Surge, además, que, luego de varias incidencias procesales, la Administración Auxiliar de Adquisiciones de la ASG y la Agencia Requirente, procedieron a evaluar las propuestas revisadas y le hizo su recomendación final a la Junta de Subastas. Respecto al proceso de evaluación de las propuestas, la Junta de Subastas explicó lo siguiente:

> En la primera fase de la evaluación se examinaron las propuestas a los fines de determinar si estas cumplieron con los términos y condiciones insubsanables u obligatorios. Es decir, la entrega de la fianza de licitación por el (10) por ciento del total de la propuesta en cumplimiento con lo dispuesto en el pliego del RFP en original y firmada; la propuesta del Proponente (Anejo I) completada en todas sus partes y firmada por la persona autorizada en el RUL; la propuesta sometida de manera física y electrónicamente; la participación en la reunión pre-propuesta; completar e incluir todos los Anejos del RFP; y tener un mínimo de tres (3) años de experiencia en el servicio requerido.

> En la segunda etapa, las propuestas fueron evaluadas de forma integrada tomando como base: (a) la capacidad técnica con cuarenta y cinco (45) puntos; (b) el desempeño pasado con veinticinco (25) puntos; (c) la propuesta de precios que significaba veinte (20) puntos; y (d) la capacidad financiera que representaba diez (10) puntos. El método de lo que representa el "mejor valor" para los intereses del Gobierno, no necesariamente corresponde al precio ofrecido más bajo.

> Así las cosas, los proponentes que como resultado de la evaluación obtuvieran al menos la mitad de los puntos en la suma de todos los criterios, sin incluir en el cómputo de esta etapa la puntuación otorgada en precio, fueron categorizados como proponentes calificados para continuar en el proceso.

> Para la capacidad técnica, se evaluó la capacidad del proponente para cumplir satisfactoriamente las necesidades del Gobierno. Las puntuaciones fueron concedidas evaluando la información provista por los proponentes.

Sobre el desempeño pasado, se evaluó: carta de presentación; dos (2) cuestionarios de desempeño pasado; y la información de tres (3) proyectos recientes similares en cuanto al número de documento, complejidad e indexación, tipo de equipo utilizado y descripción que demuestre la experiencia de la empresa en este tipo de servicio por los cuatro (4) años.

Para la evaluación del criterio de precio, para cada caso, se divide la oferta más baja, entre el precio de la oferta de evaluación. Esto se multiplica por la cantidad de puntos disponibles para la distribución de precios. En este caso, el cálculo es multiplicado por los veinte (20) puntos disponibles para precios.

Este proceso asegura que el proponente con el precio más bajo reciba la totalidad de los puntos disponibles, mientras que el resto de los proponentes reciben una puntuación proporcional a la diferencia de precio respecto a la propuesta más competitiva.

Además, se solicitó una garantía para la calidad, precisión e imágenes sobre la digitalización documentos e indexación realizada por lo menos por tres (3) años. El término para completar los trabajos es de 24 meses. El licenciamiento es por volumen, no por usuario. La digitalización se efectuará simultáneamente en los quince (15) centros que establecerá ADSEF. Se solicitó digitalización e indexación para treinta millones (30,000,000) de documentos; y los Anejos VI, X, XI, XII, XIII, XIV; entre otros.

En cuanto a la capacidad financiera, el pliego disponía que debían presentar un estado financiero revisado o auditado de los tres (3) años contributivos anteriores, incluidos los de pérdidas y ganancias, estado de situación y balances. Por otro lado, también se requirió que los proponentes demostraran la capacidad financiera para cubrir el costo de los gastos de la empresa en función de un ciclo de facturación de 30 y 60 días.

Para asignar la puntuación disponible para el criterio de capacidad financiera con relación al estado financiero, evaluamos la capacidad de cada proponente para manejar un proyecto de la envergadura de este RFP. Nuestra evaluación incluye un análisis de las ventas o ingresos totales de las empresas, la rentabilidad de sus operaciones (tanto en relación con las ventas, como con el nivel de activos), los niveles de endeudamiento en relación con su capital y la liquidez de cada proponente.

Las puntuaciones otorgadas a los proponentes reflejan su desempeño en cada uno de los criterios mencionados. Los proponentes con mayores niveles de ventas, mayor rentabilidad relativa a esas ventas y menores niveles de deuda en relación con su capital recibieron mejores puntuaciones. Por el contrario, los proponentes con altos volúmenes de ventas, pero que operan con altos niveles de deuda y baja rentabilidad, o

que incurren en pérdidas, recibieron puntuaciones más bajas.

Ahora bien, para determinar si una propuesta es beneficiosa y conveniente para el Gobierno y otorgar la *buena pro* de este RFP, esta Junta no tan solo tomó en consideración el precio, sino el cumplimiento con los términos y condiciones por parte del proponente, y la puntuación final obtenida. Debemos señalar que, en un proceso de RFP, el precio es solo uno de los criterios a los que se le asigna puntuación, pero al adjudicar, se toma como resultado la totalidad de los puntos asignados a un proponente. Esto fue así explicado en el pliego del RFP.

Por otro lado, mediante la *Resolución*, la Junta de Subastas adjudicó la buena pro a Xerox Corporation, por motivo de que, su propuesta satisfacía las necesidades y los requisitos. Indicó, además, que, Xerox Corporation había cumplido con las instrucciones generales, los términos, las condiciones, los requerimientos especiales y las disposiciones requeridas en el Pliego del RFP. Le adjudicó a Xerox Corporation 88 de los 100 puntos máximos posibles.

Asimismo, determinó que las propuestas presentadas por Ricoh Puerto Rico, Inc., e Innovate Consultants Associates, Inc. no representaban el mejor valor para el Gobierno de Puerto Rico. Respecto a la propuesta de Ricoh Puerto Rico, sostuvo que, esta era 150% más costosa que la de Xerox, le otorgó un total de 86 puntos de 100 y la rechazó. En cuanto a la propuesta de Innovative Consultants determinó que no cumplía con lo solicitado para el RFP, y que por ello, quedaba descartada.

Inconforme con tal determinación, Ricoh Puerto Rico presentó ante la Junta Revisora de Subastas, la *Solicitud de Revisión Administrativa*. En apretada síntesis, mediante su escrito, la parte recurrida sostuvo que, la *Adjudicación de Subasta* era inoficiosa y nula por no estar fundamentada. Argumentó que, esta omitía sustentar o explicar cómo fueron determinados los puntos a favor y en contra de cada licitación para llegar al total asignado del total de

Puntos de los Criterios de Evaluación establecidos en la Tabla de Criterios de Evaluación de la Invitación, y que, la única información sobre los puntos era el resultado de Xerox con 88 y Ricoh con 86. Añadió que, ello le impedía determinar si la adjudicación de la subasta era razonable. De igual manera, arguyó que, en la adjudicación únicamente se presentaron generalidades y alegaciones concluyentes que no proveían la información y evaluación requerida conforme al estado de derecho vigente. Además, que, no incluía o describía una exposición de los señalamientos que impactaron las puntuaciones otorgadas, o qué factores ocasionaron la reducción en puntuación a Ricoh. Conforme a lo anterior, sostuvo que, la adjudicación no cumplía con los requisitos legales para proveer una notificación adecuada, conforme a los Art. 32, 33(e) y 53 de la Ley Núm. 73-2019, *infra,* el Reglamento Núm. 9292 y la jurisprudencia. A estos efectos, la parte recurrente le solicitó a la Junta Revisora de Subastas considerar el proceso de evaluación desde su inicio y emitir la adjudicación correspondiente.

La *Solicitud de Revisión Administrativa* presentada por Ricoh Puerto Rico fue denegada de plano.

Aun en desacuerdo, la parte recurrente acudió ante este foro revisor y esgrimió los siguientes señalamientos de error:

- Erró la Junta de Subastas al tramitar sin jurisdicción esta subasta de selección de servicios profesionales.

- Erró la Junta de Subastas en su obligación de obtener la participación de la Puerto Rico Innovate Technology Service "PRITS".

- Erró la Junta de Subastas al no fundamentar su Notificación de Adjudicación y no comparar las características y circunstancias de las licitaciones de los licitadores Xerox y Ricoh.

- Erró la Junta de Subastas al adjudicar puntación a Xerox a pesar de esta no haber producido la información requerida sobre capacidad técnica, desempeño pasado, licencias y entrenamientos, requisitos de responsividad requeridos en los t[é]rminos y condiciones.

- Erró la Junta de Subastas al no darle seria consideración a los reparos expresados por ADSEF a la licitación de Xerox.

El 22 de agosto de 2023, la parte peticionaria presentó la *Moción en Auxilio de Jurisdicción.*

Por no entender necesaria la comparecencia de la parte recurrida, prescindimos de esta[2].

## II

### A. *Jurisdicción*

Nuestro Tribunal Supremo, ha definido la jurisdicción como el poder que ostentan los tribunales para considerar y decidir los casos y las controversias que sean presentados a su atención. *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89 (2020), *Torres Alvarado v. Madera Atiles*, 202 DPR 495 (2019); *SLG Solá-Moreno v. Bengoa Becerra*, 182 DPR 675, 682 (2011). Es normativa reiterada que, los tribunales debemos ser celosos guardianes de nuestra jurisdicción, es por lo que, los asuntos relativos a la jurisdicción son privilegiados y deben ser atendidos con prontitud. *R&B Power. Inc. v. Junta de Subasta ASG*, 2024 TSPR 25, 213 DPR ___ (2024); *Báez Figueroa v. Adm. Corrección*, 209 DPR 288, 298 (2022); *Torres Alvarado v. Madera Atiles*, supra, pág. 500; *González v. Mayagüez Resort & Casino*, 176 DPR 848, 856 (2009). La ausencia de jurisdicción puede ser levantada *motu proprio*, ya que, esta incide de forma directa sobre el poder del tribunal para adjudicar una controversia. *Allied Mgtm. Group. v. Oriental Bank*, 204 DPR 374 (2020); *Torres Alvarado v. Madera Atiles*, supra, pág. 500; *Ruiz Camilo v. Trafon Group Inc.,* 200 DPR 254, 268 (2018); *Souffront v. AAA*, 164 DPR 663, 674 (2005). Si un tribunal carece de jurisdicción, solo resta así declararlo y desestimar la reclamación

---

[2] En virtud de la Regla 7 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B R.7, este tribunal tiene la facultad para prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos en cualquier caso ante su consideración, con el propósito de disponer el recurso de manera eficiente.

sin entrar en sus méritos. *R&B Power. Inc. v. Junta de Subasta ASG,* supra.

### B. Request for Proposal y notificación de adjudicación

En *Puerto Rico Asphalt, v. Junta,*[3] nuestro Más Alto Foro explicó que, la subasta tradicional y el requerimiento de propuestas (*request for proposal*) son los dos vehículos procesales que tanto el gobierno central como los municipios, utilizan para la adquisición de bienes y servicios.[4] El propósito primordial de estos es proteger el erario, al fomentar la libre y diáfana competencia entre el mayor número de licitadores posibles.[5] Puesto que, el proceso de contratación de servicios por las agencias del Gobierno, está revestido del más alto interés público, debido a que busca promover la inversión adecuada, responsable y eficiente de los recursos del Estado[6]. Con ello, se pretende maximizar la posibilidad del Gobierno para obtener el mejor contrato, mientras se protegen los intereses y activos del pueblo contra el dispendio, el favoritismo, la corrupción y el descuido al otorgarse contratos.[7]

En nuestro ordenamiento jurídico no existe una legislación especial que regule los procesos de subasta. Corresponde a cada ente gubernamental ejercer su poder reglamentario para establecer el procedimiento y las guías que han de seguir en sus subastas para la adquisición de bienes y servicios.

En lo pertinente, la Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019, Ley Núm. 73 de 19 de julio de 2019, según enmendada, regula "los procesos de compras y subastas de bienes, obras y servicios no profesionales en todas las Entidades

---

[3] *Puerto Rico Asphalt v. Junta,* 203 DPR 734 (2019).
[4] *PR Eco Park, Inc. et al. v. Mun. de Yauco,* 202 DPR 525 (2019); *R&B Power v. ELA,* 170 DPR 606 (2007).
[5] *Íd.* Véase, además, *Transporte Rodríguez v. Jta. Subastas,* 194 DPR 711, 716–717 (2016).
[6] *Super Asphalt v. AFI y otro,* 206 DPR 803, 820 (2021)
[7] *Transporte Rodríguez v. Jta. Subastas,* supra, págs. 716–717.

Gubernamentales y las Entidades Exentas".[8]  La Ley Núm. 73-2019 creó la Junta de Subastas y la Junta Revisora de Subastas.[9] Según la aludida ley, la Junta de Subastas "estará facultada para evaluar y adjudicar, mediante un procedimiento uniforme, las subastas del Gobierno de Puerto Rico", mientras, que, la Junta Revisora de Subastas "estará facultada para revisar cualquier impugnación de las determinaciones o adjudicaciones hechas por la Administración Auxiliar del Área de Adquisiciones, por la Junta de Subastas de la Administración de Servicios Generales del Gobierno de Puerto Rico o por las Juntas de Subastas de las Entidades Exentas".[10]

Respecto a la adjudicación de subastas, el Art. 32 del precitado estatuto, dispone lo siguiente:

> [...] La notificación de adjudicación estará debidamente fundamentada y deberá incluir los fundamentos que justifican la determinación, aunque sea de forma breve o sucinta, en aras de que los foros revisores puedan revisar tales fundamentos y así determinar si la decisión fue arbitraria, caprichosa o irrazonable. Como mínimo, la notificación debe incluir: (1) los nombres de los licitadores que participaron en la subasta y una síntesis de sus propuestas; (2) los factores o criterios que se tomaron en cuenta para adjudicar la subasta; (3) los defectos, si alguno, que tuvieran las propuestas de los licitadores perdidosos, y (4) la disponibilidad y el plazo para solicitar Revisión administrativa ante la junta revisora de subastas de la Administración de Servicios Generales y revisión judicial.[11]

Asimismo, el Art. 53 de la Ley Núm. 73-2019 dispone que:

> [...] Como mínimo, la notificación debe incluir: (1) los nombres de los licitadores que participaron en la subasta y una síntesis de sus propuestas; (2) los factores o criterios que se tomaron en cuenta para adjudicar la subasta; (3) los defectos, si alguno, que tuvieran las propuestas de los licitadores perdidosos; y (4) la disponibilidad y el plazo para solicitar revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales y revisión judicial.[12]

---

[8] Art. 3 de la Ley Núm. 73-2019, 3 LPRA 9831b.
[9] 3 LPRA secs. 9836 & 9837; *R&B Power. Inc. v. Junta de Subasta ASG*, supra.
[10] 3 LPRA secs. 9836 & 9837; *R&B Power. Inc. v. Junta de Subasta ASG*, supra.
[11] Art. 32 de la Ley Núm. 73-2019, 3 LPRA 9834h.
[12] 3 LPRA sec. 9836f.

De igual manera, el *Reglamento Uniforme de Compras y Subastas de Bienes, obras y Servicios no Profesionales de la Administración de Servicios Generales del Gobierno de Puerto Rico*, Reglamento Núm. 9230 de 18 de noviembre de 2020 (Reglamento Núm. 9230), dispone sobre la notificación adecuada de la adjudicación de subasta. Respecto a lo anterior, en su sección 7.4.21, establece que:

> […] La notificación de adjudicación deberá incluir: (i) los nombres de los proponentes participantes en la Solicitud de Propuestas o Solicitud de Propuestas Selladas y una síntesis de sus propuestas; (ii) los factores o criterios que se tomaron en cuenta para la adjudicación de la propuesta; (iii) los defectos, si alguno, que tuvieran las propuestas de los proponentes perdidosos, y (iv) la disponibilidad y el plazo para solicitar la revisión administrativa y revisión judicial.

Cabe destacar que, "[e]l derecho a cuestionar [cierta] adjudicación de una subasta mediante el proceso de revisión judicial es parte del debido proceso de ley".[13] *PVH Motor v. ASG*, 209 DPR 122, 132 (2022). Véase, *PR Eco Park et al. v. Mun. de Yauco*, supra, pág. 538. Por lo tanto, para poder ejercer su derecho, es indispensable que las notificaciones que se realicen durante estos procesos sean efectuadas correctamente a todas las partes. *PVH Motor v. ASG*, supra, pág. 132; *PR Eco Park et al. v. Mun. de Yauco*, supra, pág. 538; *IM Winner, Inc. v. Mun. de Guayanilla*, 151 DPR 30, 35 (2000).

---

[13] Como es sabido, el Artículo II, Sección 7, de la Constitución del Estado Libre Asociado de Puerto Rico prohíbe que cualquier persona sea privada de su libertad o propiedad sin un debido proceso de ley. LPRA, Tomo 1, ed. 2023, pág. 305. Al examinar el alcance de la mencionada cláusula constitucional, el Tribunal Supremo de Puerto Rico ha sentenciado que la doctrina del debido proceso de ley tiene dos (2) acepciones: la sustantiva y la procesal. *PVH Motor v. ASG*, supra, pág. 130; *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 394 (2018); *Domínguez Castro et al. v. E.L.A. I*, 178 DPR 1, 35 (2010). En específico, la Alta Curia ha establecido que la vertiente sustantiva del debido proceso de ley busca proteger y salvaguardar los derechos fundamentales de las personas, mientras que su vertiente procesal obliga al Estado a garantizar que la interferencia en los intereses de libertad y propiedad del individuo se haga mediante un proceso justo e imparcial. *PVH Motor v. ASG*, supra; *Fuentes Bonilla v. ELA et al.*, supra; *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 887–888 (1993). Estas garantías constitucionales se extienden no solo al ámbito judicial sino también al administrativo. *PVH Motor v. ASG*, supra; *Fuentes Bonilla v. ELA et al.*, supra; *Aut. Puertos v. HEO*, 186 DPR 417, 428 (2012); *Báez Díaz v. ELA*, 179 DPR 605, 623 (2010).

A esos efectos, nuestra última instancia judicial ha sentenciado que una notificación defectuosa de una determinación tomada por las agencias administrativas priva de jurisdicción al foro revisor para entender el asunto en disputa, lo que impide que comience a transcurrir el término para recurrir de cualquier determinación administrativa y, consecuentemente, violenta el derecho al debido proceso de ley de la parte afectada. *PVH Motor v. ASG*, supra, pág. 132; *PR Eco Park et al. v. Mun. de Yauco*, supra, pág. 538; *Torres Alvarado v. Madera Atiles*, supra, pág. 502. Para que una notificación de subasta sea correcta, deberá contener la siguiente información: nombre de los licitadores, síntesis de las propuestas sometidas, **factores o criterios que fueron tomados en consideración para adjudicar la subasta y razones para no adjudicar a los licitadores perdidosos**.[14] (Énfasis nuestro).

Por último, sobre la exigencia de fundamentar la adjudicación de una subasta por una agencia administrativa, en *LPC & D, Inc. v. AC*, 149 DPR 869, 877–888 (1999), nuestro Tribunal Supremo señaló que "para que este Tribunal pueda cumplir con su obligación constitucional y asegurar que el derecho a obtener la revisión judicial de una decisión de una agencia sea efectivo, *es imprescindible exigir que ella esté fundamentada*, aunque sea de forma sumaria". (Énfasis suplido)[15] Si la parte adversamente afectada por la determinación de la agencia desconoce los fundamentos que propiciaron su decisión, "el trámite de la revisión judicial de la determinación administrativa se convertiría en un ejercicio fútil".[16] En ese sentido, "[n]o *basta con informar la disponibilidad y el plazo para solicitar la reconsideración y la revisión*".[17] Además, una notificación fundamentada permite que los

---

[14] *PR Eco Park et al. v. Mun. de Yauco*, supra, pág. 537.
[15] Véase, además, *RBR Const., SE v. AC*, 149 DPR 836 (1999).
[16] *Id.*
[17] *Puerto Rico Asphalt v. Junta*, supra, citando a: *LPC & D, Inc. v. AC*, supra, pág. 878.

tribunales puedan "revisar efectivamente los fundamentos para determinar si la determinación de la Junta ha sido arbitraria, caprichosa o irrazonable", más aún en el caso de subastas públicas, en virtud de las cuales se desembolsan fondos públicos.[18] Por ello, "'[*so*]*lo a partir de la notificación así requerida es que comenzará a transcurrir el término para acudir en revisión judicial*". (Énfasis en el original).[19]

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nuestra consideración.

**III**

Como tribunal apelativo, en primer lugar, estamos obligados a examinar si ostentamos jurisdicción para atender el recurso presentado. Veamos.

Según reseñáramos, el 17 de junio de 2024, la Junta de Subastas emitió la *Resolución de Adjudicación* sobre el *Aviso de Adjudicación de la Solicitud de Propuestas Selladas Núm. 24J-01599*. De la mencionada Resolución surge que, la Junta de Subastas le adjudicó la buena pro a Xerox.

Conforme el derecho expuesto, la Ley Núm. 73, el Reglamento Núm. 9230 y la jurisprudencia, exigen que en el aviso de adjudicación se incluyan los factores o criterios que se tomaron en consideración para adjudicar la subasta y las razones para no adjudicarla a los licitadores perdidosos.[20]

De una revisión a la *Resolución de Adjudicación* pudimos constatar que, a pesar de que hace alusión a la totalidad de puntos otorgados a cada licitador, no surge de forma alguna un desglose de cómo estos fueron adjudicados. A pesar de que en el *Pliego de*

---

[18] Véase: JA Echevarría Vargas, *Derecho administrativo puertorriqueño*, 4ta ed. rev., San Juan, Ed. Situm, 2017, pág. 297. Véanse, además: *Transporte Rodríguez v. Jta. Subasta*, supra, pág. 721; *LPC & D, Inc. v. AC*, supra, pág. 879.

[19] *Puerto Rico Asphalt v. Junta*, supra, citando a *PR Eco Park et al. v. Mun. de Yauco*, supra, pág. 534; *IM Winner, Inc. v. Mun. de Guayanilla*, supra, pág. 38.

[20] Arts. 32 & 53 de la Ley Núm. 73-2019, *supra*; Sec. 7.4.21 del Reglamento Núm. 9230, *supra*; *PR Eco Park et al. v. Mun. de Yauco*, supra, pág. 537.

*Solicitud de Propuestas Selladas RFP 24J-01599* se incluyó una tabla con los criterios a evaluarse y las puntuaciones por renglón, esta no fue incluida en la *Resolución de Adjudicación.*

De igual manera, solo se hace alusión a un criterio por el cual no se le adjudicó la buena pro al licitador perdidoso, que fue por motivo de que la propuesta de Ricoh Puerto Rico era 150% más costosa que la de Xerox.

La Junta de Subastas no incluyó ni discutió la totalidad de los criterios que utilizó para adjudicar la subasta, lo que hace de la notificación una defectuosa.  Hasta tanto la adjudicación de la subasta no sea debidamente notificada no surte efecto jurídico alguno.

Todo lo anterior nos priva de jurisdicción para entender en la impugnación de la subasta.  No obstante, nada impide que, una vez la Junta de Subastas notifique adecuadamente la Resolución de adjudicación, los licitadores perdidosos recurran la decisión dentro del término jurisdiccional para ello.

**IV**

Por los fundamentos que anteceden, se desestima el recurso por falta de jurisdicción, por notificación defectuosa. Consecuentemente, se declara No Ha Lugar la *Moción en Auxilio de Jurisdicción.*

Notifíquese inmediatamente.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones